# EXHIBIT A

## SERVICES AGREEMENT AND SITE SUBLEASE

THIS SERVICES AGREEMENT AND SITE SUBLEASE ("Agreement") is entered into as of the __1__ day of October 2013 ("Effective Date") by and between The Eye Clinic of North Dakota, P.C., a North Dakota professional corporation ("Practice") and Bismarck Refractive, LLC, a Delaware limited liability company ("Tenant").

### RECITALS:

A. Practice offers ophthalmic care and treatment to patients at the facility located at 620 North 9th Street, Bismarck, North Dakota 58501 (the "Site"). In the operation of its business, Practice employs personnel skilled and trained to serve as surgical technicians for laser vision correction procedures, including photorefractive keratectomy, laser in-situ keratomileusis and other forms of refractive laser surgical procedures (the "Procedures")

B. Tenant is in the business of providing facilities, equipment, personnel and administrative services to ophthalmologists who perform Procedures.

C. Tenant desires to sublease and improve a designated portion of the Site from Practice and to obtain the services of Practice's personnel to assist Tenant's customers in performing Procedures at the Site.

NOW, THEREFORE, in consideration of the mutual covenants and undertakings contained in this Agreement, Tenant and Practice agree as follows:

## ARTICLE 1

### RELATIONSHIP OF THE PARTIES

1.1 Relationship of the Parties. The parties intend to establish an independent contractor arrangement and nothing in this Agreement shall be construed as to make either party hereto the employer or employee of the other, agent or principal of the other, the joint venturer or partner of the other, or have the right to, or control of, or in any manner conduct the other's business, other than as is herein explicitly provided.

## ARTICLE 2

### PERSONNEL

2.1 Access to Personnel. Practice shall employ, pay, provide and supervise personnel to serve in the positions described on Exhibit 2.1 and any such other personnel as the parties may mutually agree. All employees provided by Practice shall be appropriately licensed or certified, as may be reasonably necessary or required to perform their duties under this Agreement. However, nothing in this Agreement shall prevent the Practice, at its discretion, from terminating, removing, combining and/or reassigning such individuals providing services as employees of Practice and/or locating such employees at such places as are appropriate.

2.2 Compensation of Practice's Personnel. Practice shall be responsible for the compensation, including fringe benefits, expenses and other support and operating costs of all personnel it employs and provides under this Agreement; provided, however, that Practice shall be reimbursed by Tenant, as set forth in Article 4, for a portion of the salary, wages, benefits and employment taxes (collectively, "Personnel Expenses") of any personnel provided pursuant to this Article 2.

2.3 Scheduling of Personnel. The parties shall, from time to time, mutually agree upon the hours during which Practice's personnel shall be devoted to conducting the business of Tenant at the Site.

2.4 Employee Liability. Practice shall be solely responsible for the hiring, compensation, termination and all matters relating to any persons or entities employed by Practice, and shall indemnify and hold Tenant harmless from any liability arising from such person's employment by Practice.

2.5 Status of Employees. It is the intent of the parties that no individual whose compensation for services is paid by Practice shall be in any way, directly or indirectly, expressly or by implication, deemed an employee of Tenant or any related entity, nor shall any such individual be deemed to be employed by Tenant or any related entity for the purpose of any payroll taxes, income tax withholding or contributions imposed by an federal, state or local law or regulations, with respect to employment, workers' compensation or otherwise. Practice accepts exclusive liability for any and all payroll taxes, income tax withholding or contributions, in any form whatsoever, imposed by federal, state or local law or regulations.

## ARTICLE 3

## SUBLEASE AND SITE ACCESS

3.1 Primary Lease. Eye Clinic Building, LLP (the "Landlord") and Practice are parties to that certain Lease Agreement dated January 1, 2013, as subsequently amended ("Primary Lease"), attached hereto as Exhibit 3.1 and incorporated herein, whereby Practice leases the Site from Landlord.

3.2 Subleased Premises. Practice hereby subleases to Tenant and Tenant subleases from Practice, approximately 300 rentable square feet of the Site as shown on the drawing attached to this Agreement as Exhibit 3.2 ("Subleased Premises").

3.3 Rent and Adjustments. The rent for the Subleased Premises is as set forth in Exhibit 3.3. Tenant shall pay rent to Practice on or before the first calendar day of each month. In the event Practice, subsequent to the execution hereof, receives an abatement, credit or offset, refund or reduction (collectively, "Rent Reduction") of any rent or other amounts payable by Practice under the Primary Lease, Tenant shall share in such Rent Reduction, but only if Tenant has paid or assumed all or part of the underlying obligation which gave rise to the Rent Reduction. Tenant's share of any such Rent Reduction shall be proportionate to the percentage of the underlying obligation paid or assumed by Tenant. Tenant has no obligation to the

Landlord for rent or any other monetary obligations under the Primary Lease and all payments shall be paid to Practice unless otherwise agreed.

3.4  Landlord Consent. Practice shall obtain Landlord's consent, as required under the Primary Lease, to this Article 3 and the planned improvements for the Site as set forth in Exhibit 3.4 (the "Planned Improvements"). Tenant shall perform such actions as reasonably requested by Practice to obtain Landlord's consent. Tenant shall not make any alterations, improvements or installments at the Premises without Practice's and Landlord's prior written consent. Practice shall bear all costs and expenses associated with the Planned Improvements. Tenant may terminate this Agreement by providing written notice to Practice in the event Practice fails to obtain the consent of Landlord by the earlier of (i) the date the Planned Improvements are completed; or (ii) March 1, 2014.

3.5  Use of Subleased Premises. Practice acknowledges that Tenant intends to use the Subleased Premises to provide management and administrative services to ophthalmologists who perform Procedures.

3.6  Parking and Cleaning. Tenant shall be entitled to share with Practice those parking spaces, if any, allocated to Practice under the Primary Lease. Practice shall ensure that cleaning and janitorial services are provided at the Site on each day that Practice is open for business, and shall bear sole responsibility for the cost of such services.

3.7  Compliance with Primary Lease.

 3.7.1  This Sublease is a sublease only, and does not create a lessor-lessee relationship between Landlord and Tenant.

 3.7.2  Notwithstanding anything herein to the contrary, the parties acknowledge that this Sublease is second in time and in right to the Primary Lease, and expressly subordinate thereto.

 3.7.3  Upon a termination of the Primary Lease for any reason, including any violation by Tenant of the rules, regulations and other conditions of tenancy provided for in the Primary Lease which are not cured within the applicable cure periods described in the Primary Lease, this Sublease shall terminate.

 3.7.4  Except as otherwise expressly provided in this Article 3, Tenant agrees to comply in all respects with the terms, rules, regulations and other conditions of the Primary Lease insofar as the same are applicable to the Subleased Premises.

 3.7.5  Neither Practice nor Tenant shall cause an event of default under the Primary Lease.

3.8  Landlord Performance.

 3.8.1  Practice agrees to take commercially reasonable measures to secure the Landlord's performance of its obligations under the Primary Lease as such relate to the Subleased Premises, for the benefit of Tenant.

3.8.2 Tenant shall be entitled to receive from Practice all the rights of Practice under the Primary Lease as the same relates to the Subleased Premises.

3.9 Substantial Damage or Destruction. If the Subleased Premises, or any substantial portion of the Subleased Premises, are damaged or destroyed by any cause whatsoever, Tenant may terminate this Agreement. Additionally, if Practice, in the position of "tenant" under the Primary lease, is given a right to terminate the Primary Lease due to damage or destruction, Practice may terminate this Agreement in accordance with the provisions of Article 8 hereof. In the event of a termination under this Section by Tenant, rent and other payments for which Tenant is liable shall be apportioned and paid to the date of such termination, and Tenant shall immediately deliver possession of the Subleased Premises to Practice.

3.10 Less than Substantial Damage or Destruction. If less than a substantial portion of the Subleased Premises are damaged or destroyed by any cause whatsoever and such damage or destruction is not significant enough to cause a termination of this Agreement, Practice agrees to use good faith efforts to cause Landlord to repair such damage. During the period of such repair or restoration Tenant's obligation to pay Rent shall be governed by the provisions of Article 11 of the Primary Lease.

3.11 Condemnation. Upon taking by condemnation or other eminent domain proceeding of all or a portion of the Subleased Premises, this Agreement shall terminate concurrently with the taking and the provisions of Article 8 hereof shall apply. All other rights between the Practice and Tenant shall be governed by Article 11 of the Primary Lease.

3.12 Licenses and Permits. Tenant shall obtain all necessary certificates, licenses or permits to do business in the Subleased Premises, which may be required by any governmental authorities.

3.13 Assignment by Practice. Practice shall not sublease or assign all or any part of the Site during the term of this Agreement to any other party, affiliate or related entity without Tenant's and Landlord's consent, which may not be unreasonably withheld. Tenant shall not sublease or assign all or any part of the Subleased Premises during the term of this Agreement to any other party, affiliate or related entity without Practice's and Landlord's consent, which may not be unreasonably withheld.

3.14 Insurance. Practice and Tenant shall cooperate with the other to separately obtain and maintain all insurance policies required to be carried under the Primary Lease. The limits of said insurance shall not limit the liability of Practice or Tenant nor relieve Practice or Tenant of any obligation hereunder.

3.15 Quiet Enjoyment. Provided Tenant is not in default, Tenant shall have the right to quiet enjoyment of the Subleased Premises during the term of this Agreement as provided in Article 36 of the Primary Lease.

3.16 Landlord Approval Fees. Any fees incurred to secure Landlord's approval of this Agreement, including Landlord's review of this Agreement and the Planned Improvements, shall be expenses incurred by the Practice. As between Practice and Tenant, Practice shall bear all

costs assessed by Landlord hereunder, and shall reimburse Tenant for any such costs paid by Tenant to Landlord.

3.17   Office Equipment and Supplies. Tenant shall be entitled to use office equipment (facsimile machines, copier machines, telephones, shredders, etc.) and office supplies (paper, writing utensils, etc.) located at the Site. The parties shall agree on an allocation of expenses related to such office equipment and supplies based on Tenant's usage.

## ARTICLE 4

## DUTIES OF OWNER

4.1   Reimbursement of Expenses. Tenant shall reimburse Practice, a portion of the Personnel Expenses incurred by Tenant pursuant to Article 2. As to any individual member of Tenant's personnel, such reimbursement shall be equivalent to the Personnel Expenses incurred by Practice during the month at issue and associated with such individual, multiplied by a fraction, the numerator of which equals the total number of hours such individual worked exclusively for Tenant during the month at issue, and the denominator of which equals the total number of hours such individual worked for Practice (inclusive of hours worked for Tenant) during the month at issue. Practice shall invoice Tenant for any expenses subject to reimbursement pursuant to Sections 3.17 and 4.1, and such invoices shall be due and payable within sixty days of the date of such invoice. Any amounts not paid when due shall accrue interest at the lesser of 18% per annum, or the maximum rate permitted by applicable law, from the date due until the date paid.

## ARTICLE 5

## COVENANTS

5.1   Non-Disclosure Covenant. Each party shall keep confidential and refrain from disclosing the trade secrets or other confidential or non-public proprietary information (collectively, the "Confidential Information") of the other party. Each may use the Confidential Information only to further the purposes of this Agreement and shall refrain from using the Confidential Information directly or indirectly on behalf of itself or any third party. Confidential Information shall include, without limitation, the following:

- Business systems, methods, prospects and plans;
- Marketing plans and strategies;
- Pricing policies and strategies;
- Financial data, statements and analyses;
- Quality assurance data, trending and analyses;
- Operational procedures, reporting and training; and

- Sales aids, training materials, techniques and strategies.

5.2  Anti-Raiding Covenant. During the term of this Agreement and for a period of two years thereafter each party shall refrain from engaging directly or indirectly in any of the following activities with respect to a "Prohibited Person" (as hereinafter defined):

- Employ or engage a Prohibited Person;

- Arrange for another person or organization to employ or engage a Prohibited Person;

- Attempt to complete any one or more of the activities described above through solicitation, encouragement or otherwise.

For purposes of this section, "Prohibited Person" means, as to each party, any personnel employed by the other party on the effective date of termination of this Agreement, except Dr. Larry Womack and any other surgeons employed by The Eye Clinic of North Dakota, P.C.

5.3  Remedies. Each party agrees and acknowledges that any violation of this Article 5 by such party may result in irreparable injury to the other party, that a remedy at law for any breach or threatened breach of the covenants contained herein may be inadequate and that in the event of any such breach, the aggrieved party, in addition to any other remedies or damages available to it at law or in equity, shall be entitled to temporary injunctive relief before trial from any court of competent jurisdiction as a matter of course and to permanent injunctive relief without the necessity of proving actual damages or securing or posting any bond. Further, in addition to an injunction, the aggrieved party shall also be entitled to any other damages a court of competent jurisdiction may deem appropriate.

## ARTICLE 6

## INSURANCE AND INDEMNIFICATION

6.1  General Indemnification Provisions. Each party (the "Indemnitor") shall indemnify, save and hold harmless the other party (the "Indemnitee") from and against any and all judgments, damages, costs and expenses, including reasonable attorney's fees, paid or incurred by the Indemnitee in any claim, action or proceeding for damage to property, injury or death to a person, or otherwise, arising out of the acts or omissions, or willful misconduct in Indemnitor's performance under this Agreement or breach of this Agreement by Indemnitor. Indemnitor's obligations as set forth in the preceding sentence are conditioned upon (i) Indemnitee promptly notifying Indemnitor of any claim, demand or action, for which Indemnitee will look to Indemnitor for indemnification under this Section, provided that any delay or failure to promptly so notify the Indemnitor shall relieve the Indemnitor of its obligations hereunder only to the extent, if at all, that it is materially prejudiced by reason of such delay or failure (ii) Indemnitee, its directors, managers, officers, employees and servants cooperating fully with Indemnitor in Indemnitor's investigation and review of any such claim, demand, action or incident, and (iii) Indemnitee not entering into any admissions, agreements or settlements without the prior written consent and approval of Indemnitor, which shall not be unreasonably withheld.

6

6.2     Third Party Claims. The terms of this Section shall apply to all third party claims (each a "Claim") for which a party may be entitled to indemnification under Section 6.1. An Indemnitee shall give prompt written notice of such Claim to the Indemnitor and the Indemnitor may assume the defense thereof, provided that any delay or failure to promptly so notify the Indemnitor shall relieve the Indemnitor of its obligations hereunder only to the extent, if at all, that it is materially prejudiced by reason of such delay or failure. The Indemnitee shall have the right to approve the terms of any proposed settlement, such approval not to be unreasonably delayed or withheld (unless such settlement provides only, as to the Indemnitee, the payment of money damages actually paid by the Indemnitor and a complete release of the Indemnitee in respect to the Claim in question). In the event the Indemnitor undertakes the defense of any Claim, the Indemnitor will keep the Indemnitee advised as to all material developments in connection with such Claim, including but not limited to, promptly furnishing the Indemnitee with copies all material documents filed or served in connection therewith. In the event the Indemnitor fails to assume the defense of any Claim within ten (10) business days after receiving written notice thereof, the Indemnitee shall have the right, subject to the Indemnitor's right to assume the defense pursuant to the provisions of this Article, to undertake the defense, compromise or settlement of such Claim for the account of the Indemnitee. In no event shall an Indemnitor be required to pay for more than one firm of counsel in connection with any Claim. Upon payment of any indemnity obligation contained in this Article by any party, the Indemnitor shall be subrogated to any right of the Indemnitee with respect to the matter against which indemnity has been given. Any payments received by the Indemnitee from any person except the Indemnitor as a result of any matter with respect to which the Indemnitee has been indemnified by the Indemnitor pursuant to this Article shall be paid over to the Indemnitor to the extent necessary to reimburse the Indemnitor for the indemnification payments previously made.

6.3     Tenant's Insurance. Tenant shall, at its expense, procure and maintain for the term of this Agreement:

        6.3.1     premises liability insurance with commercially reasonable terms;

        6.3.2     comprehensive casualty insurance with commercially reasonable terms covering property owned by the Tenant and located at the Subleased Premises with minimum limits of one million and 00/100 dollars ($1,000,000.00) per occurrence and three million and 00/100 dollars ($3,000,000.00) in the aggregate; and

        6.3.3     workers compensation insurance meeting statutory requirements with respect to Tenant's employees.

6.4     Practice's Insurance. Practice shall obtain, at its expense which is not reimbursed by Tenant:

        6.4.1     premises liability insurance with commercially reasonable terms;

        6.4.2     comprehensive casualty insurance with commercially reasonable terms covering the Site with minimum limits of one million and 00/100 dollars ($1,000,000.00) per occurrence and three million and 00/100 dollars ($3,000,000.00) in the aggregate; and

    6.4.3 workers compensation insurance meeting statutory requirements with respect to Practice's employees.

  6.5 Each party will notify the other of any cancellation or significant change thirty (30) days prior to such cancellation or material change. Coverage shall, if the cost thereof is reasonable, provide for a retroactive date of placement coinciding with the Effective Date of this Agreement. The above insurance requirements shall be deemed continuing and shall survive any termination or expiration of this Agreement. Tenant shall reimburse Practice for that portion of the cost of such worker's compensation insurance attributable to Practice's employees assigned to or performing services on a full-time basis for Tenant.

## ARTICLE 7

## PRACTICE'S REPRESENTATIONS AND WARRANTIES

  7.1 <u>General Representations and Warranties.</u> Practice hereby represents and warrants to Tenant that (a) Practice is duly authorized to conduct business and is in good standing under the laws of each jurisdiction in which the character or location of the properties owned or the business conducted or proposed to be conducted by Practice makes such qualifications necessary, (b) the execution and delivery of this Agreement by Practice has been duly authorized and this Agreement is binding upon Practice, (c) Practice has all licenses, permits and other authorizations (except as disclosed to Tenant) necessary to carry out its duties under this Agreement, and (d) the execution and delivery of this Agreement will not violate any agreement to which Practice is a party.

  7.2 <u>Representations and Warranties Related to Sublease.</u> Practice further represents and warrants that:

    (a) Practice has not yet obtained the Landlord's agreement to the terms of Article 3, but that Practice has applied to the Landlord for such approval; and

    (b) Exhibit 3.1 represents a true, correct and complete copy of the Primary Lease, to the best of Practice's knowledge; no defaults exist thereunder by either Practice or Landlord, there are no material defects or deficiencies in the Subleased Premises and Practice has complied with all of the provisions of the Primary Lease in entering into this Agreement.

## ARTICLE 8

## TERM AND TERMINATION

  8.1 <u>Term of Agreement.</u> This Agreement shall commence upon the Effective Date and continue in full force and effect until terminated in accordance with Article 3 or section 8.2 of this Agreement.

  8.2 <u>Termination of Agreement.</u>

8

8.2.1 <u>Legal Jeopardy</u>. If the performance by either party of any term, covenant, condition or provision of this Agreement is determined by a state or federal court or governmental agency or by qualified legal counsel to violate any law or regulation ("<u>Jeopardy Event</u>"), the parties shall use their best efforts to meet forthwith and attempt to negotiate an amendment to this Agreement to remove or negate the effect of the Jeopardy Event. Any such determination of legal counsel shall be in writing and furnished to the parties without waiving the attorney-client privilege for any communication other than said writing. If the parties are unable to negotiate such an amendment within thirty (30) days following written notice by either party of the Jeopardy Event, either party may terminate this Agreement immediately upon written notice.

8.2.2 <u>Change of Circumstances</u>. In the event any federal, state or local legislative or regulatory authority adopts any law, rule, regulation, policy, procedure or interpretation thereof which, in the reasonable determination of either party, based on the advice of legal counsel is more likely than not to require a material change in the manner of either party's operations or obligations under this Agreement, then, upon the request of either party materially affected by such change in circumstances, the parties shall enter into good faith negotiations for the purpose of establishing such amendments or modifications to this Agreement, and any other agreement to which the parties hereto may be a party, as may be appropriate in order to accommodate the new requirement and change of circumstances while preserving the original intent of this Agreement to the greatest extent possible. The advice of legal counsel upon which a party basis its reasonable determination of a material change in circumstances shall be in writing and furnished to the other party without waiving the attorney-client privilege for any communication other than said writing. In the event that within the period of thirty (30) days following the date notice is first given by one party hereunder to the other that a material change in the manner of either party's operations under this Agreement is required, the parties have not agreed to amend or modify this Agreement, or any other agreement to which the parties hereto may be a party, then this Agreement may be terminated immediately by any party.

8.2.3 <u>Material Breach</u>. Either party may terminate this Agreement in the event the other party fails to comply with any material term of this Agreement, and such failure is not cured within a period of thirty (30) days after written notice thereof (unless such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if the party receiving the notice proceeds promptly and with due diligence to cure such failure and diligently completes the curing thereof as soon as reasonably practicable), and the term of this Agreement shall terminate at the option of the non-breaching party upon notice to the breaching party.

8.2.4 <u>Termination of Primary Lease.</u> This Agreement shall terminate upon the termination or expiration of the Primary Lease.

8.2.5 Tenant may terminate this Agreement following thirty (30) days prior written notice to Practice, in the event Practice experiences a Change of Control. For

9

purposes of this Agreement a "Change of Control" shall mean: (a) such time as the current shareholders of Practice cease to own 51% or more of the outstanding stock of Practice; (b) any merger, consolidation, business combination or similar transaction involving Practice pursuant to which the equity interest held by the current shareholders of Practice retained following such transaction constitutes less than 51% of the aggregate equity interest in the surviving or resulting entity of such transaction or any direct or indirect parent thereof; (c) any sale, lease, exchange, transfer, license, acquisition or disposition of substantially all of the assets of Practice; or (d) any liquidation or dissolution of Practice.

8.2.6 Termination of Existence. This Agreement shall terminate upon termination of the existence of Tenant.

8.3 Procedure and Effect of Termination.

8.3.1 The parties agree that their respective obligations pursuant to Section 2.4, Article 5 and Article 6 of this Agreement shall survive the termination and remain in full force and effect. The parties further agree that the termination of this Agreement shall not relieve either party of any liability or obligation that accrued prior to the effective date of termination.

8.3.2 Upon the effective date of termination of this Agreement, Tenant shall vacate the Site, remove all of its personal property, and surrender possession of the Site to Practice.

## ARTICLE 9

## MISCELLANEOUS

9.1 Assignment. This Agreement shall not be assigned by either party without the prior written consent of the other party.

9.2 Effect on Successors. This Agreement shall be binding upon, enforceable by, and inure to the benefit of the parties and their permitted successors and assigns.

9.3 Further Documents. The parties do hereby covenant and agree that they and their successors and assigns will execute any and all instruments, releases, assignments and consents which may reasonably be required of them in order to carry out the provisions of this Agreement. Notwithstanding expiration or termination of this Agreement, each party hereto shall take such further actions as are necessary to fulfill its existing obligations, which by their terms require performance after expiration or termination of this Agreement.

9.4 Integration. This Agreement is executed as part of a series of agreements among Tenant, Practice, and TLC Vision Centers, LLC. In addition to this Agreement, such series of agreements includes:

- Limited Liability Company Agreement of Bismarck Refractive, LLC

- Management Services Agreement (Bismarck Refractive, LLC, and TLC Vision Centers, LLC)

These agreements and their exhibits, schedules and attachments embody the entire agreement and understanding among the parties and supersede all prior agreements and understandings among and between the parties relating to the subject matter hereof or thereof as applicable.

9.5    Applicable Law. This Agreement and the rights of the parties shall be governed by, construed, and enforced in accordance with the laws of the State of Delaware excluding any conflicts of law provisions that would require the application of the laws of any other jurisdiction; provided, however, that nothing in this Agreement is intended to relieve any party of any duties under North Dakota law as they pertain to the licensure and regulation of health care facilities and health care practitioners.

9.6    Notices. Except as otherwise provided in this Agreement, any notice, payment, demand, request or communication required or permitted to be given by any provision of this Agreement shall be in writing and shall be duly given by the applicable party if given to the applicable party at its address set forth below. Any such notice shall, for all purposes, be deemed to be given and received:

If by hand, when delivered;

If given by nationally recognized and reputable overnight delivery service, the business day following the business day on which the notice is actually received by the overnight delivery service; or

If given by certified mail, return receipt requested, postage prepaid, three (3) business days after posted with the United States Postal Service.

If to Practice:    The Eye Clinic of North Dakota, P.C.
Attn: Dr. Monte Leidenix
620 North 9th Street
Bismarck, ND 58501

If to Tenant:    Bismarck Refractive, LLC
c/o TLC Vision Centers, LLC
16305 Swingley Ridge Road
Suite 300
Chesterfield, MO 63017
Attn: General Counsel

9.7    No Waiver. The failure of any party to insist at any time upon the strict observance or performance of any of the provisions of this Agreement shall not impair any such right or remedy or be construed to be a waiver or relinquishment. Every right and remedy given by this Agreement to the parties may be exercised from time to time and as often as may be deemed expedient by the parties.

11

9.8     Severability. The invalidity or unenforceability of any term or provision of this Agreement shall not, unless otherwise specified, affect the validity or enforceability of any other term or provision, and may be severed.

9.9     Section Captions. Section and other captions contained in this Agreement are for reference purposes only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

9.10    Interpretation. Each party has had the opportunity to have this Agreement reviewed by counsel and be advised by counsel as to the rights and obligations of each party. This Agreement shall not be construed or interpreted more strictly against one party than another on grounds that the Agreement or any draft thereof was prepared by a party or its counsel.

9.11    Execution. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of such counterparts shall together constitute one and the same Agreement. Execution and delivery of this Agreement by delivery of a facsimile or electronically recorded copy (including a .pdf file) bearing a copy of the signature of a party shall constitute a valid and binding execution and delivery of this Agreement by such party. Such copies shall constitute enforceable original documents.

9.12    Change of Circumstances. In the event any federal, state or local legislative or regulatory authority adopts any law, rule, regulation, policy, procedure or interpretation thereof which, in the reasonable determination of either Practice or Tenant, based on the advice of legal counsel (which such advice shall be in writing and furnished to the other party) is more likely than not to require a material change in the manner of either party's operations or obligations under this Agreement, then, upon the request of either party materially affected by such change in circumstances, the parties shall enter into good faith negotiations for the purpose of establishing such amendments or modifications to this Agreement, and any other agreement to which the parties hereto may be a party, as may be appropriate in order to accommodate the new requirement and change of circumstances while preserving the original intent of this Agreement to the greatest extent possible. In the event that within the period of ninety (90) days following the date notice is first given by one party hereunder to the other that a material change in the manner of either party's operations under this Agreement is required, the parties have not agreed to amend or modify this Agreement, or any other agreement to which the parties hereto may be a party, then upon thirty (30) days' notice thereafter by either party to the other this Agreement may be terminated without incurring any liability as a result thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

TENANT

**BISMARCK REFRACTIVE, LLC**

By: _____
Printed Name: _Clarice Y. Anderson_
Its: _Secretary_

_[signature]_
Monte Laidlaw, MD
owner

PRACTICE

**THE EYE CLINIC OF NORTH DAKOTA, P.C.**

By: _____
Printed Name: _Monty Laidlaw, MD_
Its: _President_

13